**In the Matter of SEL–O–RAK CORPORATION, Debtor.**

**ASSOCIATES COMMERCIAL CORPORATION, Plaintiff,**

v.

**SEL–O–RAK CORPORATION, Defendant.**

**Bankruptcy No. 82–00490–BKC–JAG.**
**Adv. No. 82–0326–BKC–JAG–A.**

United States Bankruptcy Court, S.D. Florida.

Sept. 10, 1982.

Britton, Cohen, Kaufman & Schantz, Miami, Fla., for plaintiff.

Myers, Kenin, Levinson, Ruffner, Frank & Richards, Miami, Fla., for debtor-defendant; Irving Mark Wolff, P.A., Miami, Fla., of counsel.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOSEPH A. GASSEN, Bankruptcy Judge.

### INTRODUCTION

This cause came on for trial before the Court on Plaintiff ASSOCIATES COMMERCIAL CORPORATION's Complaint for Relief from Stay and to permit Plaintiff to replevy property of the Debtor in which Plaintiff allegedly has a valid security interest. The Plaintiff's Application for Adequate Protection and the Plaintiff's Motion for Rehearing addressed to this Court's Order of April 8, 1982, entitled Order on Motion of Debtor in Possession for Authority to Use Cash Proceeds, Etc., were pending at the time of the trial of this adversary proceeding. Because the foregoing motions of Plaintiff and these adversary proceedings are interrelated, the Court considered the evidence and the legal argument of the parties to dispose of all of the aforementioned matters.

At the conclusion of the taking of evidence, the Debtor/Debtor in Possession, SEL–O–RAK CORPORATION, moved for leave to amend its answer to deny the existence of a valid, perfected security agreement. The Plaintiff, at the same time, moved to reopen the record so as to introduce evidence tending to show the existence of a valid security agreement. The Court by these presents does order that the Defendant's motion to amend its answer to conform to the proof is hereby granted, and the Plaintiff's motion to reopen the case to introduce evidence to discharge its burden of proof is hereby granted and the exhibits proffered are hereby admitted into evidence.

These Findings of Fact and Conclusions of Law, which considered all of the evidence, are entered in accordance with Bankruptcy Rule 752(a), and address themselves to the issue: "Is the Plaintiff vested with a valid perfected lien upon the property of the Debtor in Possession?" This proposition must be examined in accordance with the applicable Florida law.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Defendant has vigorously challenged Plaintiff's assertion, upon which its action is bottomed, that it has a valid, perfected security interest lien on the accounts receivable, inventory, machinery, furniture and fixtures (hereinafter referred to as property) of the Debtor in Possession.

At the outset, it must be observed that this issue is quite appropriately raised in these proceedings. The defense of the lack of a valid perfected lien is being asserted by the Debtor in Possession, who is armed with the rights and power of a trustee and stands in the shoes of a judgment creditor without notice. Thus, any argument advanced suggesting that the Debtor in Possession is estopped from asserting lack of perfection because of acts committed by or knowledge imputed to the Debtor corporation, is without merit. If the arguments of the Debtor in Possession are correct that the lien in question was unperfected at the time of the commencement of these Chapter 11 reorganization proceedings, then the lien is unenforceable against the Debtor in Possession.

The evidence presented to the Court has demonstrated that several years prior to the filing of its petition for voluntary reorganization, SEL–O–RAK CORPORATION and the Plaintiff engaged in business transactions whereby the latter lent money to the former pursuant to written agreements, which were amended from time to time. The Plaintiff by virtue of said agreements claims a perfected security interest lien on property of the Debtor SEL–O–RAK CORPORATION, which encumbrances Plaintiff argues must be recognized by this Court as valid liens on property of the Debtor in Possession.

At the time of the initial transaction, financing statements were filed. These financing statements, as well as subsequently filed financing statements, did not bear a legend stating that documentary stamps were purchased and affixed to the original documents of obligation. In fact, no documentary stamps were purchased, and none were affixed to the written obligations; there is no evidence that taxes were paid at the time of the initial transaction or at any time thereafter on subsequent advances. The Plaintiff has admitted that documentary stamps were purchased and affixed to the documents immediately prior to the hearing on the motion to reopen the trial in this matter. The Court has reopened the record to consider the effect of this evidence. The purchase and affixing of stamps was effected after the Defendant raised the issue that the failure to pay the required taxes and affix documentary stamps precluded the Plaintiff from asserting a lien on the property.

The Plaintiff's position is that its belated purchase of documentary stamps has no bearing on its claim that a valid lien on the property existed from the inception of the relationship between Plaintiff and SEL–O–RAK, and bears only on present enforceability of the lien. The Debtor/Debtor in Possession has strenuously maintained that no valid lien as against the Debtor in Possession and third parties has ever existed. The Court is persuaded that the latter position is consistent with Florida law.

An examination of the statutes in question makes it apparent that the Florida Legislature has attempted, by the enactment of interrelated and interdependent statutes, to prevent an entity from filing a financing statement without having first paid the required taxes. This Court has examined the scheme of regulation and is convinced, based upon the obvious legislative intent, that Florida has intended to prevent perfection of a security interest through the filing of a financing statement

until a tax is paid, although the effect of an improperly filed financing statement is not specifically addressed by any one statute.

Florida's pronouncement with respect to the requirement of payment of excise taxes in documents is quite clear:

> The documentary stamp taxes required under this chapter *shall be affixed to and placed on all recordable instruments requiring documentary stamps according to law prior to recordation.* F.S.A. Sec. 201.01. (Emphasis added)

As a corollary, the failure to pay the required excise tax violates the criminal law; a party who fails to pay has committed a misdemeanor in the second degree. F.S.A. Sec. 201.17(1). Additionally, F.S.A. Sec. 201.17(2)(b) provides for the payment of a penalty to the Florida Department of Revenue for failure to pay the tax.

The aforementioned statutory pronouncements are obviously intended to be applied in tandem with another statutory provision relative to the filing of financing statements. F.S.A. Sec. 201.22 provides:

> . . . The clerk or filing officer *shall not accept for filing* or filing and recording any financing statement under Chapter 679, unless there appears thereon the notation that the stamps required by this chapter have been placed on the promissory instruments secured by said financing statement and will be placed on any additional promissory instruments, advances or similar instrument that may be secured by said financing statement. *The failure to pay the tax required by this chapter as so stated, shall be subject to the penalties provided by this chapter.* (Emphasis added)

The Court notes that the language of F.S.A. Sec. 201.22 is mandatory; the clerk "shall not" accept for filing a financing statement without a notation thereon that the required excise taxes have been paid. The thrust of this statute is clear; it is intended to prevent perfection of a security interest where the required tax has not been paid.

In the instant case, no documentary stamps were purchased by Plaintiff prior to the commencement of these proceedings, and the financing statements received in evidence do not bear the statement advising that the appropriate taxes were paid. Yet, the filing statements were accepted by the filing officer. The Court must conclude, therefore, that the filing of the financing statement was illegal and without effect. Thus, Plaintiff's claim of lien on the property of the Debtor in Possession is without merit. Thus, the Plaintiff's claim must be classified as unsecured.

The Plaintiff relies on language in F.S.A. Sec. 201.08, which applies to the payment of taxes for future advances made, to support its argument that an otherwise valid lien is not affected by the failure to pay the required tax and failure to affix the required stamps. The statute provides in pertinent part:

> . . . If the mortgage, trust deed, security agreement, or other evidence of indebtedness subject to the tax levied by this section secures future advances, as provided in s. 697.04, the tax shall be paid at the time of recordation on the initial debt or obligation secured, excluding future advances; at the time and so often as any future advance is made, the tax shall be paid on all sums then advanced regardless of where such advance is made. Failure to pay the tax shall not affect the lien for any such future advance given by s. 697.-04, but any person who fails or refuses to pay such tax due by him is guilty of a misdemeanor of the first degree. The mortgage, trust deed, or other instrument shall not be enforceable in any court of this state as to any such advance unless and until the tax due thereon upon each advance that may have been made thereunder has been paid. F.S.A. Sec. 201.08.

The flaw in Plaintiff's argument is its failure to recognize that F.S.A. Sec. 201.08 is *in pari materia* to F.S.A. Sec. 697.04. Thus, F.S.A. Sec. 201.08 is a restrictive exception granting a lien for future advances upon payment of the required taxes.

The impact of the foregoing statutes establishes a narrow exception involving future advances. In such instances, the lien must be perfected by affixing documentary stamps simultaneously with the making of the advance. Failure to affix the documentary stamps at the time of the advance is a misdemeanor of the first degree. However, in this case, the evidence has clearly demonstrated that there was no valid initial filing because no taxes were ever paid and no documentary stamps affixed. Thus, in the case at bar, there is no valid incident of perfection of the lien for future advances which could relate back to the initial filing.

If the statutes in question were to provide a scheme of perfection which, in essence, permitted the existence of a lien prior to the payment of tax, it might be successfully argued that the creation of a debtor estate by the filing of a petition seeking relief under the Bankruptcy Code, or the intervening rights of another creditor, would not affect the lien despite the fact that the taxes are paid subsequently. However, as has been previously discussed, the applicable statutes explicitly require the payment of the tax as a condition precedent to the perfection process, i.e., the filing of a financing statement. Thus, payment of the prescribed tax subsequent to the commencement of a bankruptcy proceeding has no effect on the lien perfection process.

The Defendant Debtor in Possession has relied upon *In re Ken Gardner Ford Sales, Inc., Ford Motor Credit Corporation v. Ken Gardner Ford Sales, Inc.,* Bkrtcy., 10 B.R. 632 (1981), and *American City Bank v. Western Auto Supply,* 631 S.W.2d 410 (Tenn.1981), which construe the Tennessee revenue, recordation and perfection statutory scheme. Those cases reach the same result as that reached here through application of similar reasoning. This Court's decision, however, is not grounded upon the aforementioned opinions; the Court has not relied upon them as precedent. As has been previously discussed, the conclusions reached here result from the Court's perception of the legislative intent implicit in the Florida statutory scheme.

In reaching its conclusion, the Court has not ignored *F.S.A. Sec. 679.403(1),* which provides that if the filing fee for a financing statement is paid and accepted by the appropriate officer, the security interest is perfected. That section, however, is apparently addressed to those situations in which, through no fault of the creditor, the relevant documentation is improperly filed; under *F.S.A. Sec. 679.403(1)* the creditor is relieved of the risk engendered by administrative error. Clearly that statute cannot be applied to this situation; the duty to pay taxes as a prerequisite to perfection is not abrogated by *F.S.A. Sec. 679.403(1).*

Likewise, the Court has not ignored a line of authority construing *F.S.A. Sec. 199.012, et seq.,* which applies to intangible personal property taxes. That chapter, and the authority construing it, do not govern the situation presented in the instant controversy; the intangible personal property tax statute deals with a different type of tax and embodies different policy considerations. *See generally, American National Growers Corporation v. Harris,* 120 So.2d 212 (Fla. 2nd D.C.A.1960).

The Court's decision that Plaintiff's lien on the property of the Debtor/Debtor in Possession is unsecured severely impacts upon other matters presently pending in these proceedings. The Plaintiff's Motion for Rehearing on this Court's Order of April 8, 1982 entered on the motion of the Debtor in Possession to use cash collateral, and the Plaintiff's Application for Adequate Protection, will be made the subject of an independent order as required, and a final judgment will be entered in these adversary proceedings as required by Bankruptcy Rule 921.

On May 28, 1982 this Court entered an order continuing the trial of this cause originally scheduled for May 27, 1982, conditioned on the execution of a mortgage by Maurice and Natalie Cohen in favor of Plaintiff on real property situated and located in Dade County, Florida. The Court is advised that said mortgage was recorded in the Public Records of Dade County, Florida. The Court will entertain an appropri-

ate motion addressed to the disposition of the aforementioned mortgage.