In the Matter of KARL A. NEISE, INC., Modern Tools Corp., Debtors.

CONTINENTAL BANK, Plaintiff,

v.

Herbert S. FREEHLING, Trustee in Bankruptcy for Karl A. Neise, Inc. and Modern Tools, Inc., Carla Holdings, Inc. and Jaryn Enterprises, Inc., Defendants.

Bankruptcy Nos. 81–01424–BKC–SMW, 81–01425–BKC–JAG.

Adv. No. 83–0198–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

July 1, 1983.

---

Holland & Knight, Miami, Fla., for defendants.

Paul, Landy, Beily, Harper & Metsch, P.A., Miami, Fla., for plaintiff.

SIDNEY M. WEAVER, Bankruptcy Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS CAUSE having come on for hearing upon an Amended Complaint Seeking Abandonment of Property of Debtor, or, Alternatively, Modification of Stay to Permit Foreclosure of Security Interest and Other Relief; and the Court, having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel; and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

This adversary proceeding is a lien contest between two creditors, each claiming a duly perfected first priority security interest in the Debtors' personalty. The material facts are undisputed.

The Debtors, affiliates within the meaning of § 101(2) of the Bankruptcy Code, were engaged in the business of importing and selling machine tools and machine tool parts. Prior to these proceedings, the two Debtors operated as a single business enterprise, and early in these proceedings this Court ordered joint administration of the two estates.

The transactions which give rise to the competing lien claims here at issue, arise from the sale of the Debtors' assets. At the time of the sale, the Debtors' principal place of business and the Debtors' assets were located in the State of New York. In July, 1979, the Debtors' assets, including their corporate names, were purchased by CCM Machine Corporation ("CCM"). The basic document which memorializes the transaction is an Agreement dated June 6, 1979 ("the Agreement"). Section IV of the agreement provides, *inter alia,* that the buyer will borrow a portion of the purchase price from a bank; that the buyer will give the bank a first priority security interest in the assets purchased; that the buyer will give the sellers a security interest in the assets purchased; and that, "the security interest of sellers shall be junior and subordinate only to the security interest of [the bank]."

Plaintiff in this adversary proceeding is Continental Bank ("Continental"), a New York banking corporation. At the time of sale, the Debtors executed and delivered to Continental in the state of New York a promissory note secured by a first priority security interest in the Debtors' personalty. Continental perfected its security interest by filing financing statements in the State of New York in July, 1979.

Defendants, Carla Holdings, Inc. ("Carla") and Jaryn Enterprises, Inc. ("Jaryn") (collectively "Carla and Jaryn"), sellers of the Debtors' assets to CCM, also received a security interest in the Debtors' personalty, which they perfected by filing financing statements in the State of New York. In accordance with the terms of the Agreement, those financing statements expressly provide that the holder has a "Second priority security interest in all machinery, equipment, furniture, fixtures and inventory now owned or hereafter acquired, subordinate only to security interest therein of Continental Bank . . . ."

About a year later, on July 2, 1980, the Debtors and Carla and Jaryn entered into a Supplemental Agreement, which, *inter alia,* permitted the transfer of the Debtors' assets to a location within Florida. Paragraph 3(a) of the Supplemental Agreement again grants Carla a security interest in the Debtors' assets but expressly provides that, "the said security interest granted to Carla in this paragraph 3(a) is and shall be subordinate and junior only to the security interest of the Bank . . . ."

Between August 5 and 8, 1980, the debtors moved their assets to Florida. Within four months of the transfer, on December 4, 1980, Continental filed a financing statement with the office of the Florida Secretary of State, covering, "First priority security interest in all machinery, equipment, furniture, fixtures and inventory now owned or hereafter acquired." The "proceeds" and "products" boxes were checked on the financing statement form UCC–1. In addition, Continental's financing statement contained the following notation:

> The secured party(ies) whose signature(s) appears below, states that the stamps required by Chapter 201, Florida Statutes, if any, have been placed on the promissory instruments secured hereby, and will be placed on any additional and similar instrument that may be so secured.

On September 4, 1980, Carla filed a financing statement with the Florida Secretary of State which provided, *inter alia,*

> Second priority security interest in all machinery, equipment, furniture, fixtures and inventory now owned or hereafter acquired, subordinate only to the security interest therein of Continental Bank, 108 Seventh Street, Garden City, New York.

The secured party states that the stamps required by Ch. 201 F.S., if any, have been placed on the promissory instruments secured thereby, and will be placed on any additional and similar instrument that may be secured.

Continental, which had accepted delivery of its promissory note from the Debtors in New York in 1979, has neither purchased documentary tax stamps nor affixed them to the note. Carla, on the other hand, upon filing in Florida, did purchase and affix to its promissory note documentary stamps evidencing payment of $495 in documentary stamp taxes.

On September 4, 1981, the Debtors filed petitions under Chapter 11 of the Bankruptcy Code, seeking to reorganize their business under the protection of this Court. During the pendency of those proceedings, Carla and Jaryn sought various forms of relief, including adequate protection. By Order of this Court dated October 23, 1981, as supplemented by Order of December 3, 1981 (collectively "the Orders"), this Court granted adequate protection to both lien claimants who are parties to this adversary proceeding. The Orders directed the Debtors to grant to Continental a first priority lien in post-petition inventory and equipment and to grant to Carla and Jaryn a second priority lien in post-petition inventory, equipment and proceeds. The Orders expressly provide, however, that the granting of such post-petition liens shall in no way prejudice the right of any party in interest to request a determination of the validity, priority and extent of the liens asserted by Continental or by Carla and Jaryn.

To comply with the Orders, the Debtors granted the required security interests to Continental Bank and to Carla and Jaryn. Continental Bank further perfected its post-petition security interest by filing a financing statement on January 6, 1983, reflecting a "First security interest in all fixtures, equipment, machinery, appliances and upon all inventory acquired post-petition." Again, the "proceeds" box on the form UCC-1 was checked. Carla and Jaryn

also perfected their post-petition adequate protection lien by filing a financing statement on February 4, 1982, covering all the Debtors' inventory, machinery, equipment, furniture and fixtures, accounts receivable and proceeds thereof arising post-petition. Although neither claimant's description is entirely consistent with the mandate of the Orders, the post-petition liens were created by the Orders, so the Orders must perforce control the scope and extent of any post-petition lien claims asserted here.

Upon the Debtors' failure to effect a timely reorganization, this Court converted the Chapter 11 proceedings and appointed a Trustee to liquidate the Debtors under Chapter 7. The possibility of rehabilitation of the Debtors having been extinguished by the conversion, Continental filed this adversary proceeding seeking a determination that it holds a first priority lien and further praying for either possession of the collateral or relief from stay to foreclose its security interest. Continental's complaint names the Trustee, the Debtors, Century Bank of Broward, and Carla and Jaryn as parties defendant.

Only Carla and Jaryn have opposed Continental, contending that Continental has failed to perfect its lien by virtue of its failure to purchase and affix to its note documentary tax stamps allegedly required by Florida Statute, and further contending, in the alternative, that Continental has no perfected lien in the proceeds of the collateral pledged by the Debtors.

As the value of the Debtors' remaining personalty is substantially less that the indebtedness due to either Continental or Carla and Jaryn, the Debtors' estate has no equity in the property pledged by the Debtors to those secured creditors. Accordingly, it is proper that the Court direct the Trustee to abandon and turn over possession of the Debtors' liened assets to the prevailing party here. For the reasons which follow, based on an analysis of the apposite law as applied to the undisputed facts of record, the Court finds and concludes that Continental holds a duly perfected first lien in the Debtors' personalty, including proceeds.

Carla and Jaryn base their contention that Continental has not perfected its lien under *Fla.Stat.* § 201.22, which provides, *inter alia,* that the clerk or filing officer shall not accept for filing any financing statement unless there appears thereon the notation that the documentary tax stamps required by *Fla.Stat.* Chapter 201 have been placed on the promissory instruments secured by the financing statement. Recent decisions of this court have held that the failure to affix documentary tax stamps to documents of obligation renders ineffective an attempt to perfect a lien securing the obligation by filing a financing statement. *In re Sel-o-rak Corp.,* 26 B.R. 223 (Bkrtcy. Ct., S.D.Fla.1982); *In re AAA Machine Co., Inc.,* 30 B.R. 323 (Bkrtcy.Ct., S.D.Fla., 1983). In the instant case, where both financing statements filed in Florida by Continental bear a notation in conformity with the statute, and where Continental has not purchased any stamps, the contention that Continental is unperfected must be posited on the premise that stamps are as a matter of law required to be affixed to Continental's note.

■ On the facts presented, however, that premise is simply untenable. A fair reading of *Fla.Stat.* § 201.08 indicates that the taxable event with respect to a promissory note or other document of obligation occurs when the document is " . . . . made, executed, delivered, sold, transferred or assigned in the state . . . . " In the instant case, Continental's note was made, executed and delivered outside this state. Thus, Continental's note is not subject to Florida documentary stamp taxes. *See, Op.Atty.Gen.* 060–82, April 21, 1960; *Op.Atty.Gen.* 060–162, September 22, 1960; *Op.Atty.Gen.* 080–79, September 24, 1980. Moreover, Rule 12B–4.54(31), F.A.C. provides, *inter alia,* that the filing or recording in Florida of a U.C.C. Financing Statement is not taxable under *Fla.Stat.* § 201.08(1) unless the note is also filed or recorded, so long as the financing statement bears the required notation concerning stamps.

■ There being no tax due on its note, Continental duly perfected its first priority lien in the Debtors' personalty by filing pre-petition and post-petition financing statements in Florida, bearing the required notation. There can be no doubt that Continental's lien is first, for Carla and Jaryn subordinated their lien to that of Continental in writing under the Agreement of June 6, 1979, as well as under the Supplemental Agreement of July 2, 1980. Consistent with those agreements, all the financing statements filed by Carla and Jaryn, except the post-petition financing statement of February 4, 1982, expressly state that their lien is subordinate to that of Continental. Carla's post-petition financing statement was filed pursuant to the aforesaid Orders of this Court, which specified a second lien, except as to proceeds, with a proviso that the issue of validity, priority and extent of liens could be raised by any party. Finally, the testimony at trial by the principal of Carla and Jaryn manifest her understanding that the parties at all times intended that the lien of Carla and Jaryn be subordinate to that of Continental.

■ The second contention of Carla and Jaryn, that Continental has no security interest in the proceeds of the Debtors' personalty subject to its lien, is also without merit. Continental's note, a single document which includes a security agreement and disclosure statement, expressly grants to Continental a, "blanket security interest in all inventory, machinery, equipment, furniture and fixtures now owned and hereafter acquired together with proceeds and products thereof." That security interest, including security in the proceeds, was duly perfected by Continental's filing a financing statement in New York. It was not necessary that the financing statement expressly cover proceeds, for proceeds were and are automatically covered in New York, as in Florida, under § 9–306(2) of the Uniform Commercial Code. *See,* N.Y. UCC Law, § 9–306; *Fla.Stat.* § 679.306(2).

Continental had been granted an express security interest in proceeds, which it perfected by filing under the laws of New York. When the property subject to Continental's lien was later transferred to Florida, it was therefore entirely proper for Continental to file a financing statement in

Florida expressly covering proceeds by checking the appropriate box on the Florida Form UCC–1.

Revisiting therefore the issue of priority in proceeds, based on the complete evidentiary record established at trial in this adversary proceeding, the Court finds and concludes that Continental has a duly perfected first lien in all the Debtors' pre-petition and post-petition inventory, machinery, equipment, furniture and fixtures and the proceeds and products thereof in the amount of $269,457.17.

The Court also concludes that in the current liquidating posture of these cases, it is appropriate to look to liquidation value to determine whether equity exists. In this case, the Court finds the Debtors' inventory has a net liquidation value not exceeding $95,000.00 and that Continental's security interest is not being adequately protected. Accordingly, the Court will enter a Final Judgment directing the Trustee to abandon and turn over to Continental forthwith all personalty of the Debtors subject to the lien of Continental. The claim of Carla and Jaryn in the amount of $236,664.64 shall be allowed only as unsecured claim, and the claim, if any, of Century National Bank of Broward shall be allowed only as an unsecured claim.