**In re DOLPHIN KNITTING MILLS, INC., a Florida corporation, Debtor.**

**DOLPHIN KNITTING MILLS, INC., etc., Plaintiff,**

**v.**

**ASSOCIATES COMMERCIAL CORPO-RATION, etc., Defendant.**

**ASSOCIATES COMMERCIAL CORPO-RATION, etc., Plaintiff,**

**v.**

**DOLPHIN KNITTING MILLS, INC., etc., Defendant.**

**Bankruptcy No. 82–00504–BKC–JAG. Adv. Nos. 82–0435–BKC–JAG–A, 82–0438–BKC–JAG–A.**

United States Bankruptcy Court, S.D. Florida.

July 8, 1983.

Martin L. Sandler, Guren, Merritt, Udell, Sogg & Cohen, Miami, Fla., for Dolphin Knitting Mills, Inc.

Sherryll Martens Dunaj, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A.,

Miami, Fla., for Associates Commercial Corp.

## ORDER ON VALIDITY AND PRIORITY OF CLAIM OF ASSOCIATES COMMERCIAL CORPORATION

JOSEPH A. GASSEN, Bankruptcy Judge.

At a pretrial conference held in these consolidated cases, it was agreed that the issue of the validity of Associates Commercial Corporation's security interest in property of the debtor Dolphin Knitting was a pure question of law. The parties submitted memoranda of law and filed a written stipulation of facts (C.P. No. 45). The issue to be decided is whether Associates' security agreement is unperfected because of Associates' failure to pay the Florida documentary stamp tax prior to the filing of the financing statements or whether, instead, Associates was not required to pay the tax on the transaction in question.

In March of 1980 Dolphin Knitting Mills entered into a Maturity Factoring Agreement with the First National Bank of Dallas. In 1981 the parties executed an Equipment Security Agreement, which is the basis of Associates' alleged security. Both agreements, as well as amendments, were signed and accepted by the bank in Texas after they had been signed by Dolphin in Florida. The factoring agreement provides that it is to be performed in Texas, and both documents recite that they are to be governed by Texas law. The agreements were subsequently assigned by the First National Bank to Associates Commercial. All aspects of the assignment were completed in Texas except that Dolphin consented in Florida to the assignment to Associates. Although not included in the stipulation, it was not disputed that a financing statement was filed in Florida and no issue about that filing was raised except as to the failure to purchase and affix documentary stamps.

■ This court has previously concluded that the failure of a creditor to purchase and affix documentary stamps to financing statements prior to recording, when required to by the Florida statutes, will prevent perfection of the creditor's security interest. *Associates Commercial Corporation v. Sel-O-Rak Corporation, In re Sel-O-Rak Corporation,* 26 B.R. 223 (Bkrtcy.1983), on appeal. The reasoning of that case is adopted here.

■ The question in this case, however, is whether or not Associates was required to pay the tax, where all material aspects of the overall transaction occurred outside the state of Florida except for the filing in question. The court concludes that the Florida legislature intended the inclusion of this transaction.

Florida Statutes, § 201.01, provides generally for an excise tax on various documents. Section 201.08 provides specifically for a tax on notes and other obligations and on mortgages and security agreements. Both sections make provision for transactions which include both an obligation to pay and some type of security agreement, so that the tax is paid only once on the total transaction.

Section 201.01 provides that the tax is to be paid "by any person who makes, signs, executes, issues, sells, removes, consigns, assigns, *records,* or ships the same, or for whose benefit or use the same are made, signed, executed, issued, sold, removed, consigned, assigned, *recorded,* or shipped *in the state.*" (Emphasis added). The provision for documents *recorded* in the state was added by amendment in 1977. Section 201.-08 provides for a tax on "mortgages, trust deeds, *security agreements,* or other evidences of indebtedness *filed or recorded in this state*". (Emphasis added). This sentence was also added by amendment in 1977.

On the face of the statute it seems clear enough that the tax is to be paid on security agreements filed with the Florida Secretary of State. Where a transaction includes both the lending of money and the giving of security, the statute as amended requires that the stamps be affixed onto the security instrument at the time of recording, probably for the pragmatic reason that the tax is

more likely to be collected in that manner. The statute does not address generally the question of its application in situations where the lending of money is completed outside the state and recording is within the state. However, the significance attached by the legislature to the recording aspect of the transaction is demonstrated by the part of § 201.08 which concerns future advances. It provides that the tax is to be paid as each advance is made regardless of *where* it is made, so long as the financing statement was originally filed in Florida. This seems to show that the legislature intended to tax the process of recording or filing in Florida no matter where the loan was made.

One sentence of the statute (§ 201.08) does refer to multi-state transactions: "Mortgages, including, but not limited to, mortgages executed without the state and recorded in the state, which incorporate the certificate of indebtedness, not otherwise shown in separate instruments, are subject to the same tax at the same rate." This statement succeeds the sentence setting forth the tax rate for mortgages, trust deeds, and security agreements, and precedes the sentence which provides for situations where there is both a mortgage, trust deed or security agreement and a [separate] note or obligation. The quoted sentence is the only one in § 201.08(1) which referred to mortgages (or any type of security instrument) in the pre-1977 version of the section, and its slight inconsistency with the surrounding paragraph appears to be due more to an inartful amendment process than to legislative intention. In the context of the entire statute the sentence cannot be interpreted to imply an exclusion from taxation (by omission from specific reference) of security agreements when they have separate instruments of indebtedness which were executed outside the state.

Cases involving security instruments which were decided on the basis of the statute before its amendment to include the word "recording", such as *Rainey v. Department of Revenue,* 354 So.2d 387 (Fla.App. 1977), are not controlling. The court has not found any post-amendment Florida case which addresses the specific issue to be decided here. Similarly, cases which have decided whether or not certain notes or contracts were made in Florida are not on point because we are dealing here only with a question of recording.

■ Associates argues that even if the statute is applicable to the security agreement in question, it is not enforceable because it is an unconstitutional burden on interstate commerce. This court agrees.

A recent expression by the Supreme Court of the principles to be applied is found in *Maryland v. Louisiana,* 451 U.S. 725, 753, 101 S.Ct. 2114, 2132, 68 L.Ed.2d 576, 600 (1981):

> [A] state tax is not per se invalid because it burdens interstate commerce since interstate commerce may constitutionally be made to pay its way.... (citations omitted) The State's right to tax interstate is limited, however, and no state tax may be sustained unless the tax: (1) has a substantial nexus with the State; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the State. (citations omitted).

The tax which is the subject of this case is imposed on the process of filing financing statements with the Secretary of State of Florida. The filing is necessary only for the perfection of a security interest in property within the state of Florida, and can benefit a creditor only to the extent of the value of the Florida collateral. But the tax is imposed on the total amount of the indebtedness, even though the loan was, as a matter of law, completed outside the state.

On these facts the court concludes that the tax is unconstitutional because it goes beyond any interest the state has in the transaction, and beyond the services that the state provides—a legal system for the enforcement of rights in collateral within the state. It could also lead to multiple taxation if other states have the same type of taxing statute and the loan is made in one state while collateral exists in several states.

Because the tax is unconstitutional as applied to Associates in this case, this court will not penalize Associates for its noncompliance with the statute by preventing perfection of Associates' security interest. All other requirements for .perfection were complied with and Associates has a perfected security interest in the equipment of Dolphin which is not defeated by the filing for reorganization and the status of the debtor-in-possession as a hypothetical lien creditor as of the date of filing. At trial the amount of the claim was determined to be $116,846. (See Findings and Conclusions entered separately.) It is, therefore

ORDERED and ADJUDGED that Associates Commercial Corp. has a valid secured claim in the amount of $116,846.