ASSOCIATES COMMERCIAL CORPORATION, Appellant,

v.

SEL–O–RAK CORPORATION, Appellee.

No. 82–2241–Civ–JWK.

United States District Court, S.D. Florida, Miami Division.

Sept. 2, 1983.

---

**10.** Unless the holder of the claim agrees otherwise. *See* 11 U.S.C.A. § 1129(a)(9) (West 1979).

John L. Britton, Miami, Fla., for appellant.

Herbert Stettin, Miami, Fla., for appellee.

## MEMORANDUM OPINION REVERSING FINAL JUDGMENT

KEHOE, District Judge.

This appeal is taken from a final judgment of the Bankruptcy Court, entered after an adversary proceeding, and relegating the appellant to the status of a general unsecured creditor of the appellee. For the reasons expressed in this opinion, it is the determination of the Court that appellant had a duly perfected[1] security interest in the collateral belonging to the appellee, and was therefore entitled to enforce its security interest in the bankruptcy proceeding below for the amount of the indebtedness owed. Accordingly, the final judgment entered by the Bankruptcy Court will be reversed.

## I.

### BACKGROUND

The facts are not in material dispute. The legal issues raised arise out of a series of financial transactions which began when the appellant[2] entered into a security agreement with the appellee. As a result of this agreement, the appellant initiated a line of credit to be drawn upon by the appellee up to a stated amount. Over a period of time modifications were made to the agreement resulting in a higher line of credit established for the appellee's use and additional sums advanced. These modifications were documented in various riders to the original agreement. As part of the initial agreement and all subsequent modifications, the appellant was given a security interest in all of the appellee's accounts receivable, inventory, equipment, intangibles and the proceeds thereof. Eventually, the amount due to appellant as a result of credit advances made to appellee came to approximately $1,600,000.00.[3]

When the appellee met with financial reversals and went into bankruptcy, appellant initiated this adversary proceeding before the Bankruptcy Court seeking to replevy all of the property secured as collateral for its loan. Appellant sought relief from the automatic stay provisions of the Bankruptcy Act and enforcement of its rights as a secured creditor.

Appellee challenged appellant's status as a secured creditor, maintained that the appellant had no valid, perfected security interest, and that the underlying debt owed to appellant should be treated as a general unsecured obligation. No priority status

---

1. A "perfected" security interest is "a security interest in personal property which cannot be defeated in insolvency proceedings or in general by creditors. A security interest is perfected when the secured party has taken whatever steps are necessary to give him such an interest." U.C.C. § 9–301, Official Comment 1 (1972).

2. The appellant was not the original lender to the security agreement. The events culminating in this controversy are complicated and need not be restated in detail to understand the issues raised in this appeal. As frequently oc-

curs in transactions like this one, appellant was assigned its interest in the assets of appellee and redocumented and modified the existing loans over a period of time. For convenience, appellant will be regarded as the secured creditor throughout the period of the loan and will be referred to as such in the text.

3. Appellant contends and appellee does not dispute that only a portion of this loan was subject to the documentary stamp or excise tax. In light of the Court's decision, this fact is not material.

being accorded to appellant's claim, it was argued that appellant had no independent action on the secured collateral, and its debt should be classified as a general unsecured obligation.

These issues were tried before the Bankruptcy Court. During the trial appellee asserted for the first time that the appellant had never paid the documentary stamp tax on the underlying obligations of the security agreement as required by section 201.08, Florida Statutes (1981). Appellee argued that appellant's failure to pay the tax rendered its lien unperfected and thus unenforceable against a debtor-in-possession. In an effort to negate this issue the appellant purchased documentary stamps, based upon the entire amount of the indebtedness, even though it claimed that the underlying UCC financing statement from which appellant derived its perfected status indicated on its face that the documentary stamps had been purchased.[4]

At the conclusion of the trial the Bankruptcy Court found that the appellant's lien was unperfected and unenforceable. The lower court held that the security agreement upon which the lien was predicated had not been perfected since appellant did not affix the documentary stamps and pay the excise tax required by Florida law *before* the appellee filed its petition in bankruptcy. The Court therefore concluded that appellant's lien was unenforceable and appellant was relegated to the status of a general creditor. See *Matter of Sel-O-Rak Corporation*, 26 B.R. 223 (S.D.Fla.1982). This appeal ensued.

## II.

### DISCUSSION

Although two issues were raised and argued in the briefs, it is the Court's opinion that resolution of one of the issues effectively disposes of this appeal. The appellant contends that the Bankruptcy Court erred when it ruled that the failure to pur-

chase documentary stamps pursuant to Florida law will prevent the perfection of a security interest where the required tax has not been paid. It is this Court's view that the appellant was entitled to perfect its security interest and enforce that interest once it paid the documentary stamp tax, and that after the tax was paid it was error for the court below to rule that the appellant's security interest was unenforceable.

■ Initially, the Court observes that Florida law provides that tax statutes are to be construed strongly in favor of the taxpayer and against the government. All ambiguities and doubts are to be resolved in favor of the taxpayer. *State Department of Revenue v. Peterson Outdoor Advertising Company*, 296 So.2d 120 (Fla.App.1974); *Accord, State ex rel. Independent Life & Acc. Ins. Co. v. Dickinson*, 212 So.2d 293 (Fla.1968) and *Maas Bros. v. Dickinson*, 195 So.2d 193 (Fla.1967). While this case does not challenge a tax statute directly, it involves a collateral consequence of a failure to pay a particular tax.

The Bankruptcy Court's decision was dependent upon its interpretation of Florida law and its perception of the legislative intent implicit in that law. This Court can find no support for the Bankruptcy Court's conclusion that Florida intended to prevent perfection and enforcement of an otherwise valid security interest if the documentary stamp tax is not timely paid. Even agreeing *arguendo* with that proposition, failure to purchase the requisite stamps will, at most, prohibit the enforcement of a perfected security interest until such time as the stamps are purchased, but it does not void the perfected status of the lien altogether.

Section 201.01, Florida Statutes (1981) requires the payment of excise taxes and the affixing of documentary stamps on all recordable instruments prior to recordation. The Court agrees with the court below that until appellant purchased and affixed the

---

4. The parties continue their factual dispute on whether any stamps were originally purchased. For purposes of this appeal the court accepts the lower court's finding that no documentary

stamp tax was paid at the time of the initial transaction. Appellee's motion to supplement the record on appeal will be DENIED.

required documentary stamps, it was in violation of Florida law and was liable for the penalties imposed by the legislature of Florida. See § 201.17(1) Fla.Stat. (1981).[5]

The Court parts company with the lower court when it classifies appellant's claim as unsecured on the sole ground that the documentary stamps were not purchased prior to the commencement of these proceedings. This harsh penalty is not provided for in the statute itself and finds little support in the decisions of Florida courts construing the reach of the excise tax statutes.

Without any Florida authority to guide the Bankruptcy Court's determination, it interpreted §§ 201.01 and 201.22[6] in pari materia and concluded that the perfection of a security interest was not authorized where the required tax has not been paid. This conclusion is an erroneous interpretation of Florida law.

Moreover, appellee's reliance on Kotzen v. Levine, 678 F.2d 140 (11th Cir.1982) in support of the lower court decision is misplaced. That case stands for the proposition that § 201.08 prohibits the enforcement of a promissory note until the documentary stamp taxes are paid. Finding that the taxes had not been paid, the district court in Kotzen directed a verdict against plaintiff and dismissed the case. The district court's action was affirmed on appeal.

This court agrees with the appellant that the holding in Kotzen has no adverse impact on appellant's position. Since the appellant did pay the requisite stamp tax, it is entitled to now enforce the debt due and owing to it, together with the perfected security interest granted in connection therewith. Kotzen does not direct a contrary result.

This Court has also reviewed the Tennessee cases cited by the Bankruptcy Court, see American City Bank v. Western Auto Supply, 631 S.W.2d 410 (Tenn.Ct.App.1982); and In Re Ken Gardner Ford Sales, Inc., 23 B.R. 743 (E.D.Tenn.1982), which reached the same result as the court below. While the Bankruptcy Court expressly declined to rely on the cited cases as precedent, Matter of Sel-O-rak Corp., supra at 227, the appellee urges the Court to accept the reasoning employed by the Tennessee courts in holding that a filed security interest is limited to the amount on which the excise tax is paid. In American City Bank, supra, certain policy considerations were taken into account by that court in reaching its decision:

The defendant contends that the result we reach is too harsh despite analogous holdings in mortgage cases which have survived the test of time and identical treatment of the question by sister states which have adopted the U.C.C. and their own taxing statutes. Western Auto asserts that the statute is too limiting and ignores the realities of open-end financing. To the extent this presents a dilemma it is political, not judicial. The legislature has provided for the privilege of perfecting security interests by filing financing statements. Clearly that body is entitled to prescribe the conditions precedent that must be met to obtain legislatively conferred privileges. To obtain the benefits, creditors must bear the burdens and pay the required tax.

As a matter of public policy, those who violate the laws of this state should not be rewarded. Not only are the citizens and their state treasury short-changed, but the creditors who do pay the required tax are placed at a competitive disadvantage. Unscrupulous lenders can afford not to charge their customers for the

---

**5.** This statute makes it a criminal offense for failure to pay the required tax punishable by imprisonment of up to 60 days and a maximum fine of $500. §§ 775.082(4)(b) and 775.083(1)(e), Fla.Stat. (1981).

**6.** This statute prohibits the clerk from accepting for filing and recording any financing state-

ment unless there appears thereon a notation that the stamps have been properly affixed on the promissory instrument secured by the financing statement. "The failure to pay the tax required by this chapter as so stated, shall be subject to the penalties provided by this chapter." Id.

privilege tax *because they do not pay it.* Tax-paying creditors, who generally pass along the tax, may be thus thrust unfairly into a severe competitive squeeze. Fairness requires that we deny rewards to those who ignore the requirements of obtaining the privilege of filing.

Further, the only real way of enforcing this tax is by refusing to give the benefits of priority to those who are found to have not paid it as they should, absent implementation by the state of an audit program so costly as to likely obviate the benefit of the tax. The action of the legislature has made the tax a self-enforcing one. When a secured party knows that a security interest will be protected only to the extent of the tax paid, that party will then see to it that the correct tax is paid in all likelihood. This is because the creditor's purpose in filing is for self-protection in case the debtor defaults. On the other hand, if we were to interpret the statute as defendant suggests, we would encourage creditors to use whatever devices might be available to them to pay little or no tax.

*Id.* at 425 (emphasis in original).

It appears that the Tennessee court is engaging in a legislative, not a judicial function when it passes upon the wisdom of its recording statute and decides what is required by fairness. This Court declines the appellee's invitation to engage in judicial policymaking. It is the considered judgment of the Court that the Florida legislature would not have imposed such a drastic change in the rights of creditors under Florida commercial law without some governing language to that effect in the statute itself. This conclusion is reinforced by the observation that the legislature pro-vided specific penalties for failure to comply with the recording statutes.[7]

If the state legislature desired to additionally penalize a creditor by making an otherwise enforceable security interest unenforceable when the proper excise tax has not been paid, it could easily have done so. To concur in the lower court's decision would effectively make holders of secured interests the guardians of the state revenue laws and place upon them a continuing responsibility to ensure that all relevant excise taxes are paid. In the absence of some clear expression otherwise by the legislature, courts should not impose additional penalties nor eliminate well-established commercial rights under the Uniform Commercial Code.

The Tennessee court is correct in asserting that the punitive result borne by the appellant here is a political, not a judicial decision. It is therefore a decision best left to the political body responsible. Additional penalties should not be engrafted on the statute by the courts. Courts must be ever vigilant to avoid judicial intrusion into an area reserved for the legislature. This Court cannot therefore sustain the action taken by the court below.

### III.

### CONCLUSION

The final judgment denying the relief sought by the appellant and dismissing the complaint is reversed, and this cause is remanded with directions to reinstate the complaint and treat appellant's claim as a perfected security interest.[8]

---

**7.** See n. 5, supra. The Court has not overlooked the obvious dissimilarity between the Florida and Tennessee recording statutes. It is significant that Tennessee provides no criminal penalties for failure to pay the documentary stamp tax. Cf. T.C.A. § 67–4102, Item S(b), with § 201.17(1), Fla.Stat. (1981).

**8.** No other challenge has been made on appeal to appellant's perfection of its security interest.

The Court assumes that if appellant had paid the documentary stamp tax at the time its filing statement was initially recorded, there would now be no question that appellant is entitled to enforce its duly perfected interest in the proceedings below. Any other challenge to appellant's security interest is left for decision by the court below.