In the Matter of WPRV–TV, INC., Debtor.

Civ. No. 91–2276 GG.

United States District Court, D. Puerto Rico.

Feb. 4, 1992.

Charles A. Cuprill–Hernandez, Ponce, PR, for Ponce Federal Bank, appellant-appellee.

Garcia–Arregui & Fullana, Andres Garcia Arregui, Isabel M. Fullana, Santurce, PR, for Ponce Federal Bank, F.S.B.

Carlos A. Piovanetti Rivera, Hato Rey, PR, for Puerto Rico Family Channel, appellant-appellee.

Garcia & Fernandez, Edgardo Munoz, Hato Rey, PR, for Trustee Evangelina Vives.

Ivonne Aguilu, San Juan, PR, for Puerto Rico Telephone Co.

Alejandro Alveira, Hato Rey, PR, Asst. U.S. Trustee.

Lillian Mendoza, Santurce, PR, for Autoridad Energia Electrica.

## ORDER

GIERBOLINI, Chief Judge.

This case involves a television station, WPRV–TV, Inc. which is in Chapter 7 bankruptcy. On November 12, 1991 this Court held a hearing to consider the trustee's request to sell the estate's assets to the Puerto Rico Family Channel, Inc., (hereafter PRFC), and Ponce Federal Bank's objections to such sale. We issued a bench ruling approving the sale to the PRFC, followed on

December 19, 1991 by an Opinion and Order and a Judgment formalizing our earlier ruling, 143 B.R. 315.

After the November 12th approval of the sale, the trustee had numerous talks with the buyers to execute the asset purchase agreement, (hereafter APA). This APA and the bidding instructions had been submitted to the PRFC prior to the trustee's recommendation of their purchase offer, and the November 12th hearing where we approved the recommended sale to the PRFC. The PRFC's acceptance of the proposed APA and the bidding instructions were an integral part of the agreement reached between the trustee and the PRFC, which agreement led to the trustee's recommendation that we approve the sale to them. The PRFC made no objections to the terms of the APA prior to the November 12th court approval of the sale, but thereafter refused to sign the APA.

To accommodate the buyers, the trustee accepted some of the modifications to the APA requested by them and included additional clauses previously agreed to. The buyers still refused to sign the APA. The trustee set a final date for execution of the APA on December 13, 1991 but to her chagrin Mr. Norman González Chacón, who had been acting as the representative for PRFC throughout the negotiations, failed to attend the meeting. As a consequence, she gave notice that the sale to PRFC was terminated and the good faith deposit of $100,000.00 put up by the purchasers was forfeited. More than thirty (30) days had elapsed from the court's oral order approving the sale to PRFC on November 12, 1991 and pursuant to clause 7(b) of the bidding instructions the buyers had to sign the APA within thirty (30) days of final court approval of the sale.

The PRFC filed a motion requesting an emergency hearing and for an order to rescind the trustee's termination of the sale and the forfeiture of the deposit. The trustee, in turn, requested that her actions be approved.

The trustee set a second date for signing of the APA on January 16, 1992. The PRFC again refused to sign the APA. Even assuming arguendo that the final court approval of the sale was not until issuance of our written Order and Opinion of December 19, 1991, the PRFC still refused to sign the APA within thirty (30) days of final court approval of the sale as required by clause 7(b) of the bidding instructions.

Hearings were held on January 15, 1992 and January 21, 1992. The purchasers were advised that the court would hold still another hearing on January 27, 1991 to explore the financial capacity of the buyers, the method of financing, the identity of all parties in interest in the PRFC, the reasonableness of the clauses in dispute and the appropriateness of the forfeiture of the deposit.

The trustee had also raised concerns regarding possible misrepresentations on the part of the purchasers as to their financial capacity to consummate the purchase agreement and the actual identity of the persons who would be in control of the TV station.[1]

The trustee was legitimately concerned with determining which individuals were in fact the representatives of the PRFC. Mr. Carlos Piovanetti, the attorney for the PRFC, confirmed allegations that Mr. Norman González Chacón was currently facing felony criminal charges. The trustee believed these charges would threaten FCC approval of the transfer of the license to PRFC. Mr. Piovanetti represented to this court and to the trustee that Norman González Chacón was stepping aside entirely from the transaction, and would play no role as an officer, director or shareholder of PRFC.

After considering all the evidence presented we conclude that the sale must be set aside. In spite of ample opportunity afforded to the PRFC to present evidence of its financial worth, no such proof was introduced to this court by the date set for the January 27th hearing.[2]

---

1. This aspect is relevant since the sale contemplates transfer of the transmission license by the Federal Communications Commission.

2. After this Order had been drafted, the buyers presented on January 30, 1991 a motion to submit documentary evidence in support of their assertions as to the availability of funds to purchase the station. (dckt. # 39). The evidence submitted included the following: 1) copy of agreement reached January 28, 1992 between

The only evidence presented by the PRFC was the testimony of Mr. Juan Ramón Guzmán, who characterized himself as "a contact" for four prospective investors. Mr. Guzmán presented no evidence as to the financial solvency of the PRFC, Norman González Chacón, Federico Rivera Saéz, Drs. Rodríguez Millán, Colón Vélez, Colón Martínez, López Deynes or any other investor. He produced nothing more than his statement of what he was told by a group of doctors of their interest in investing the necessary funds for the purchase of the TV station, and his belief that they would come forward with the necessary funds provided that the APA was renegotiated. Mr. Guzmán had no knowledge whatsoever of the net worth of the prospective investors and, upon questioning, testified that he had not seen nor requested the financial statements of any of the persons or entities interested in the transaction.

Contrary to prior representations made to us by Mr. Piovanetti, Mr. González Chacón was still the driving force behind all efforts to obtain the financing for the sale. Guzmán testified that Mr. González Chacón was the only person identified to him as being the representative of the PRFC in its effort to obtain financing for the purchase. Guzmán did not even know who Rivera Saéz was, despite the fact that González Chacón and Rivera Saéz had represented themselves to the trustee as constituting a partnership who were the real parties in interest behind the PRFC.

The buyers made other misrepresentations to the trustee including the existence of the PRFC as a corporate entity and the proposed method of the sale's financing. Despite affirmative representations to the contrary, the corporation to which the sale was to be made, Puerto Rico Family Channel, Inc., had not even been created at the time the offer was tendered or at the time the sale was approved. The buyers originally represented that the sale would be financed through debt and advanced sale of air time, but later proposed funding the sale through sales of stock in the newly formed corporation Puerto Rico Family Channel, Inc. This last type of funding involves dispersed control over the station, and requires fuller disclosure than the buyers had previously made. The trustee when recommending the sale to the PRFC had relied on these misrepresentations, to the detriment of the estate.

The clauses purchasers now object to, were either part of the original APA submitted to them in September 1991 which were conditions upon which the trustee was offering the assets for sale, or were clauses added to allay specific concerns the PRFC had that the going concern value of the station be preserved. The purchasers presented no objections to the APA prior to making their offer or prior to the hearing where we approved the sale. The buyer's belated objection to the validity or reasonableness of the APA's terms is not a legitimate reason for the buyers to refuse to sign it.

The buyers are bound by their offer to purchase which the trustee accepted and recommended to this court. Clauses, such as the requirement that purchasers bear the cost of maintaining and operating the station

Advance Local Development Corporation (ALDC) and Norman González Chacón as "President" of the PRFC, 2) January 29, 1992 letter from Pablo Rodriguez Millán to González Chacón as President of the PRFC regarding the willingness of the four doctors to testify at a future hearing, 3) January 27, 1992 letter from José Román de Jesús, M.D., President of the Puerto Rico Medical Association to whom it may concern. These submissions are tardy and need not be considered.

Even considering these items they constitute "too little, too late", and do not alter our order's conclusions. The agreement's validity in item A is expressly conditioned on the acceptability of all legal documents to the lender's legal counsel, (nothing indicates that the lender has accepted the APA as previously negotiated), and the lender's confirmation that all representations made in the borrower's application are not false or misleading, (the application itself is not even submitted as an exhibit). See exhibit # 1, clauses VII and X. Misrepresentations to either the ALDC or this court are apparent from the face of the document itself since the agreement is dated January 28, 1992 and signed by Dr. Norman González Chacón as President of the Puerto Rico Family Channel despite counsel Piovanetti's assurances to this court on January 21, 1992 that González Chacón had totally disaffiliated himself from the Puerto Rico Family Channel, Inc. and would not be an officer of the newly incorporated entity. We need not consider these submissions further.

**4**

while the FCC considers the transfer of the license, are binding on the buyers and were compelled by the representations of González Chacón that the PRFC offer was predicated on preservation of the going concern value of the station. To effectuate this, the buyers agreed to assume the cost of maintenance and upkeep until the closing was concluded. Accepting the buyers' present position would be tantamount to giving our seal of approval to fraud and unfairness. This, of course, we can not and will not do.

Our Circuit has articulated the governing legal standard as follows:

"... a court may set aside [the] sale ... if: (a) there was fraud, unfairness or mistake in the conduct of the sale; or (b) the price brought at the sale was so grossly inadequate as to shock the conscience of the court and raise a presumption of fraud, unfairness or mistake."

*M.R.R. Traders, Inc. v. Cave Atlantique, Inc.*, 788 F.2d 816, 818 (1st Cir.1986) (citing *In re Stanley Engineering Corp.*, 164 F.2d 316, 318 (3rd Cir.1947)).

The trustee can not relinquish her duty of full and complete control over the estate's assets until a sale is finalized. Since the sale can not be closed until after the FCC approves the transfer of the license, the trustee must retain full control. Consequently, the APA's terms and the trustee's position are reasonable and necessary if the going concern value of the station is to be preserved.

In summary we find that:

1. There is no evidence of the financial capacity of the PRFC or of any of the other individual investors: González Chacón, Rivera Saéz, or the four physicians mentioned as new investors by Mr. Guzmán.

2. Criminal charges are currently pending against González Chacón. Contrary to the representations of Mr. Piovanetti that González Chacón was completely disaffiliating himself from the PRFC as an entity, González Chacón has in fact continued to negotiate on its behalf.

■ 3. The PRFC received a copy of the APA in September of 1991, accepted its terms and raised no objections until December. Consequently, the APA's original terms formed the basis of the agreement between the trustee and the PRFC upon which this court approved sale of the station to them at the November 18 hearing. Those terms are reasonable and fair. Therefore, PRFC is estopped from disputing their validity.

4. The bidding instructions and the conditions contained within had been given to the PRFC in advance of their offer. The terms of the bidding instructions were binding and formed part of the agreement reached between the parties. The PRFC failed to execute the APA on two separate occasions, without any valid reason. More than the thirty (30) days required by clause 7(b) of the bidding instructions for the execution of the APA thus elapsed.

■ 5. The trustee properly retained full control over the assets of the estate since the FCC has not approved a transfer of the license to the PRFC.

■ 6. The misrepresentations made by González Chacón in his representative capacity on behalf of the PRFC, concerning the incorporated status of the PRFC, the method of financing the purchase, the true financial capacity of the entity and its investors and the identity of the actual investors, constitute fraud.

WHEREFORE, it is hereby **ORDERED** that:

1) The sale approved by this court on November 12, 1991, and the Judgment dated December 19, 1991, be and are hereby, **VACATED AND SET ASIDE.**

2) The forfeiture by the trustee of the $100,000.00 good faith deposit by the purchasers be and is hereby **APPROVED.**

Finally, in view of all of the above, the trustee is **GRANTED** authority to continue to negotiate the sale of the television station to other interested entities. The trustee is further **INSTRUCTED** to file periodical reports on the status of the proceedings.

**SO ORDERED.**