### In re FEINSTEIN FAMILY PARTNERSHIP, Debtor.

No. 96–14294–9P1.

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

Feb. 24, 2000.

Domenic Massari, III, Massari Law Group, Tampa, Florida, for Feinstein Family Partnership.

W. Andrew Clayton, Jr., Sarasota, Florida, Vance E. Salter, Coll Davidson Smith Salter & Barkett, P.A., Miami, Florida, for trustee Shari Streit Jansen.

Brian K. Gart, Greenberg Traurig, P.A., Fort Lauderdale, Florida, for the Kennedy Funding Group.

Mark J. Bernet, Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Tampa, Florida, for Freeman & Slosbergas, trustees.

Carlos M. Sires, Jeffrey T. Kucera, Kirkpatrick & Lockhart LLP, Miami, Florida, for the Northern Trust Bank of Florida, N.A.

David E. Cary, Fort Myers, Florida, for the Lee County Tax Collector.

Raymond V. Miller, Kaufman, Miller, Dickstein & Grunspan, P.A., Miami, Florida, for the NationsBank, N.A.

Holland & Knight, LLP, Tampa, Florida, W. Patrick Ayers, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Florida, S. Randall Humm, Norman Rave, DOJ, Environmental Defense Section, Environment and Natural Resources Division, Washington, DC, for Anglo–American Financial.

**ORDER ON JOINT MOTION OF SHARI STREIT–JANSEN, CHAPTER 7 TRUSTEE, AND KENNEDY FUNDING GROUP FOR APPROVAL OF (I) SETTLEMENT AGREEMENT, (II) SALE OF PROPERTY OF THE ESTATE PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, AND (III) NOTICE AND BIDDING PROCEDURES**

ALEXANDER L. PASKAY,
Bankruptcy Judge.

The matter under consideration in this Chapter 7 case, originally commenced as a

Chapter 11 case, is a Joint Motion to Compromise and a Motion to Sell Property filed by Shari Streit–Jansen (Trustee) and Kennedy Funding, Inc.; Anglo American Financial; 3 Keys, Ltd.; and Corrine Muller as Trustee (collectively referred to as the Kennedy Funding Group.) The Joint Motion was originally challenged by the Lee County Tax Collector; NationsBank, N.A. (NationsBank); Freeman & Slosbergas, Trustees and Gelman Trust (F & S); Northern Trust Bank of Florida, N.A. (Northern Trust); and Carlton, Fields, Ward, Emanuel, Smith & Cutler, P.A., (Carlton Fields). The Objections by the Tax Collector and NationsBank have been resolved by agreement and have been withdrawn. This leaves for consideration the Objections by F & S, Northern Trust, and Carlton Fields. Before considering the Objections it should be helpful to briefly summarize the Joint Motions under attack.

The Joint Motions have actually two components, each governed by distinct legal principles. The first is a proposed settlement of a usury claim against Kennedy Funding Group relating to a loan by Kennedy Funding Group to the Chapter 11 Debtor (DIP Financing); the second is a proposed sale on a credit bid pursuant to Section 363(k) by the Trustee free and clear of all claims encumbering all the real property of the estate that is currently involved in a foreclosure suit filed by Kennedy Funding Group (the "Property"). The thrust of the Objections by Freeman and Slosbergas, Northern Trust and Carlton Fields (collectively the Objectors) are as follows:

First, according to the Objectors, the proposed settlement violates the DIP Order entered in 1997 which authorized the DIP Financing by Kennedy Funding Group. Specifically, the Objectors contend that the proposed settlement eliminates the adequate protection guarantee to the junior lienors by the DIP Order. The DIP Financing Order provided release prices based on 70% of the net or 75% of the gross proceeds of the sales, based on a minimum sale price to be agreed upon by the Debtor and the Kennedy Funding Group.

Second, the Objectors contend that if the proposed sale is approved, the release provisions are effectively written out of the DIP Financing Order and nullified. This is because the proposed sale is a sale in bulk which will not permit the calculation and the apportionment of the release price among the several junior lienors. More importantly, the proposed sale is to Kennedy Funding Group, based upon a credit bid pursuant to Section 363(k) of the Code. This would produce no actual monies, especially in the present instance where the Kennedy Funding Group claims to have a right to bid not only the actual cash proceeds of the DIP Financing advanced to the Debtor, but the full amount authorized, i.e. $16,200,000.00 plus costs and attorney fees or an amount in excess of $20 million.

Third, the DIP Financing Order gave an option to the junior lienors to pay 6.5% of the total debt owed to Kennedy Funding Group and, upon payment, they are to receive a release of the Superpriority lien of the Kennedy Funding Group on SAD Lots 7, 10 and 12 parcels. The sale as proposed would effectively deprive the junior lienors to exercise this option.

Lastly, the Objectors maintain that the proposed sale violates Section 363(f)(3) because it will not satisfy in full all valid liens encumbering the Property intended to be sold by the Trustee.

In order to place the Joint Motion and the Objections challenging the Motion in an understandable posture, a recap of the history of the property involved and the previous proceeding leading up the present controversy should be helpful.

The Property involved has been owned by the Feinstein Family for years. The Property, located in the City of Ft. Myers, is approximately 155 acres and remained largely undeveloped for many years. The property is comprised by two sections, one

referred to as SAGA 24 the other SAD 7, 10 and 12. The two parcels in SAGA 24 were encumbered by a mortgage held by Northern Trust. F & S also held a mortgage on discreet parcels. Carlton Fields had a mortgage on one parcel.

The Feinsteins decided to develop the Property and approached the City of Ft. Myers (City) for financial assistance. The application was ultimately approved and the City loaned $21,678,978.00 to Feinstein Family Partnership (Debtor), an entity formed by the Feinsteins. The loan was secured by a special assessment tax and was guaranteed by the City by pledging its non ad-valorem revenues as security. The proceeds of the loan were to be used to construct the infrastructure of SAGA 24. In addition, the City financed the development of SAD 7, 10 and 12 by lending $1,628,692.09. This obligation was also guaranteed by the City by the same pledge and was subject to the special assessment of taxes. Both obligations carried a provision that in addition to the principal the borrower was obligated to pay costs and reasonable attorney fees. The property involved was referred to as the Colonial Properties Development of Regional Impact (Colonial Properties DRI). In addition to obtaining the loan from the City, the Debtor also acquired the development rights, approvals, permits, easements and road impact fees. Under the provisions of both loans, the Debtor was required to repay the entire balance plus costs and attorney fees due upon completion of the infrastructure.

The Debtor could not obtain sufficient new financing to satisfy the balance due to the City under the special tax assessment when the City demanded payment. Having failed to receive payment, the City commenced a suit in the Circuit Court of Lee County to foreclose its lien securing the special tax assessment. Not too much of a surprise to anyone, the Debtor violently disputed the City's contention that the balance on the loans became due and contended that the infrastructure was not completed. The disagreement centered around the interpretation of the term "completion."

The disagreement, in turn, immediately spawned a flurry of litigation between the City and the Debtor, not only in the Circuit Court where the City filed its foreclosure action, but also in the United States District Court where the Debtor and its principals, the Feinstein Brothers, sued the City, the Mayor of the City and other City officials asserting various and sundry claims. When the inevitable loss of the property appeared to be looming on the horizon, the Debtor did what many debtors have done in the past, sought refuge in the court of last resort and on October 19, 1996, filed their Petition for relief under Chapter 11. The City wasted no time and on October 25, 1996, sought relief from the automatic stay in order to proceed and complete its pending foreclose action of its mortgage lien which was secured by the special tax assessment bonded indebtedness. Due to constant continuances, the Motion was not considered until March 1997. On March 7, 1997, this Court entered an Order, granting the City's Motion and authorizing it to continue its pending foreclosure in the Circuit Court.

It soon became evident that without finding a solution to its problem with the City the Debtor's chance to achieve rehabilitation and save the Property was in serious jeopardy. In order to solve the problem the Debtors embarked on an extensive search to obtain post-petition financing sufficient to take out the City.

On April 4, 1997, the Debtor filed a Motion for Authority to Borrow on First Priority Basis. At the time the Debtor filed the Motion, it had no firm commitment from any lender. However, at the rescheduled hearing on the Motion, the Debtor announced that it had arrived at an agreement with Kennedy Funding Group. The Motion was immediately challenged by Northern Trust, the City, the Lee County Tax Collector; NationsBank, the

International Bank, Gemstar Homes and Vizcaya Joint Venture.

The Motion and the Objections were heard and on May 8, 1997, this Court entered the DIP Financing Order granting the Motion to borrow on a superpriority basis. In its Order, the Court found *inter alia* that the interest of all secured creditors holding liens junior to the first lien of the City, which the DIP loan will replace, will be adequately protected. First, it will be adequately protected because the DIP lending up to $16,200,000.00 will reduce the debt to the City by almost half. Second, the DIP Loan provided for release prices of 70% of net sale proceeds, or 75% of the gross sale proceeds, based on a minimum sales price to be agreed upon between the Debtor and Kennedy Funding Group. The Order further provided that in the event the proceeds are insufficient to satisfy the junior lien holder whose collateral was sold, the Debtor will provide a substitute collateral to the junior lienors to the extent they did not receive a full satisfaction of their respective claims.

In addition, the DIP Financing Order provided that all creditors holding liens on SAD 7, 10, and 12 may pay 6.5% of the total balance owed to Kennedy Funding Group and to its Participants. Upon payment, the Kennedy Funding Group would deliver a satisfaction of the superpriority lien on SAD 7, 10 and 12 properties. The payment was required to be 6.5% of the total balance owed and could not be apportioned between the parcels.

The DIP Financing Order authorized the Debtor to borrow on a first priority lien basis subject only to the terms and conditions of the Order. The purpose of the Kennedy Funding Group's loan was to pay the City $10,500,000.00 pursuant to a settlement in full satisfaction of the lien which secured the special tax assessment less any amount already paid to the City on account of a debt of CP III, Ltd., an affiliate of the Debtor whose parcels were also encumbered by the special tax assessment. The Loan was closed and the City was paid off. The Kennedy Funding Group recorded its mortgage which, by virtue of the DIP Financing Order, became a first mortgagee on the subject property and, pursuant to the DIP Financing Order. The mortgage was superior to the mortgage liens of Northern Trust, F & S and Carlton Fields.

The Debtor defaulted on the DIP Loan and on May 20, 1998, the Kennedy Funding Group sought relief from the automatic stay. The Motion was granted on May 27, 1998. In the interim, the Debtor failed to obtain confirmation of its Fifth Plan of Reorganization. On August 8, 1998, this Court entered on Order converting the Chapter 11 case to a Chapter 7 case. Shari Streit–Jansen was placed in charge of the administration of the Chapter 7 case.

The Kennedy Funding Group having obtained a relief from the automatic stay, commenced a foreclosure action in the Circuit Court of Lee County naming all junior lienors and the Trustee as defendants. In due course, the Defendants, including the Trustee, filed their Answers alleging that the DIP Loan was usurious because out of the total amount authorized by the DIP Financing Order of $16.2 million only $12.3 million was, in fact, advanced to the Debtor. The balance claimed by the Kennedy Funding Group in its suit was for usurious loan commitment fees, unauthorized attorney fees paid to Debtor's counsel, prepaid interest and expenses.

Basically, this is the factual backdrop of this fairly complex real estate case against which this Court is called upon to consider the immediate matters under consideration, the Joint Motion for Approval of Settlement Agreement, Sale of Property of the Estate Pursuant to Section 363 of the Code and Notice and Bidding Procedures.

### JOINT MOTION FOR APPROVAL OF SALE OF PROPERTY

Before considering the merits of the Motion to Sell, the following preliminary com-

ments are relevant and appropriate. It is not rare that trustees of Chapter 7 estates are approached by secured creditors who seek the trustee's help to liquidate fully encumbered collateral. They realize that before the trustee is willing to go along with the proposition the secured creditor must put a little sweetener in the deal by agreeing to pay sufficient sums to compensate the trustee and to pay other costs of administration. The more sophisticated trustee may demand that the secured creditor throw in a pittance to pay a meaningless dividend to unsecured creditors, making the arrangement more palatable to the Court. The proposition is very attractive from the secured creditor's point of view and economically sound because it may stave off a possible attempt by the Trustee to seek to surcharge the collateral and, most importantly, save the potentially expensive cost of a foreclosure suit. The offered deal is also attractive to the trustee because it assures that he or she will earn a commission in an otherwise no asset case and may seek a commission based on the gross sales price and not on the net distributed to parties of interest. While some courts may find this calculation of the trustee's commission acceptable, there is well reasoned authority to the contrary.

It is now clear and it is well established that Section 326 of the Code precludes compensation where fully encumbered property is abandoned, sold or turned over to a secured creditor. *See In re Lambert Implement Co., Inc.*, 44 B.R. 860 (Bankr.W.D.Ky.1984); *In re Hinkle*, 15 B.R. 572 (Bankr.Kan.1981). In a more recent case, *In re Lan Associates XI, LP*, 192 F.3d 109 (3rd Cir.1999), the Third Circuit Court of Appeals held that the value of a credit bid could not be included in the base on which the trustee's compensation is computed.

Several Circuit Courts of Appeal condemning this practice commented that in enacting Section 554, Congress was aware of the claim that formerly some trustees took burdensome or valueless property into the estate and sold it in order to increase their commissions. Some of the early cases condemned this particular practice of selling burdensome or valueless property simply to obtain a fund for their own administrative expenses. *See e.g. Standard Brass Corp. v. Farmers Nat. Bank of Belvidere*, 388 F.2d 86 (7th Cir.1967); *In re Miller*, 95 F.2d 441 (7th Cir.1938). To prevent such practice Congress gave the courts the power to order the trustee to abandon burdensome or valueless property. *See In re K.C. Mach. & Tool Co.*, 816 F.2d 238 (6th Cir. 1987).

It is now almost universally recognized that where the estate has no equity in a property, abandonment is virtually always appropriate because no unsecured creditor could benefit from the administration. *In re Cunningham*, 48 B.R. 509 (Bankr.M.D.Tenn.1985); *In re Air Vermont, Inc.*, 41 B.R. 486 (Bankr.Vt.1984); *Matter of Karl A. Neise, Inc.*, 31 B.R. 409 (Bankr.S.D.Fla.1983); *In re Anspach*, 13 B.R. 208 (Bankr.E.D.Pa.1981);

No one can urge in good faith that the primary and really the only duty of a Chapter 7 trustee is "to collect and reduce to money the property of the estate as is compatible with the best interest of parties of interest." It is also true that fully encumbered property is still property of the estate until it is either abandoned by the trustee pursuant to Section 554(a) or released upon stay relief and sold by the secured creditor and that secured creditors are parties of interest. However, the interests of secured creditors by the very nature of the interest is diametrically opposed to the interest and is totally antagonistic to the interests of the general unsecured creditors. Clearly, the Code never contemplated that a Chapter 7 trustee should act as a liquidating agent for secured creditors who should liquidate their own collateral.

The relevant facts and the scenario in the present instance is a precise carbon

copy of the one just described. There is no question that the Property is overly encumbered. It is without doubt that the Property has no cognizable value over and above the total debts secured by valid liens. The fact of the matter is that Kennedy Funding Group relying, at least in part, on the lack of equity of the estate sought and obtained relief from the automatic stay and did not delay in filing its suit to foreclose its superpriority lien granted to it by the DIP Order. Apparently, upon realizing that it faced strong challenges to the validity of its mortgage lien not only by junior lienors but even by the trustee in the Circuit Court litigation, it decided that it has better to come back to Bankruptcy Court and make a deal. That is precisely what happened when Kennedy Funding Group got together with the Trustee and offered the sweetener described above by generously agreeing to pay to the estate $600,000.00 to cover the costs of administration, notably the Trustee's commission, attorney fees to professionals hired by the Trustee, among others, and also allegedly to pay some dividend to unsecured creditors, a clearly dubious proposition in light of the fact that the total unsecured claims filed are in excess of $3 million.

Clearly, this fact pattern strongly suggests that the Trustee has no business selling the Property to the Kennedy Funding Group, let alone on a credit bid. As noted, the stay had been lifted at Kennedy Funding Group's request. Kennedy Funding Group selected a forum to enforce its mortgage lien and that is where the matter should rest unless there are some very strong countervailing compelling policy considerations and principles which would require a different conclusion.

This leads to the merits of the Motion to sell in bulk, all the real estate of the estate sell free and clear of all liens and encumbrances to Kennedy Funding Group on a credit bid pursuant to Section 363 of the Code. This Section is the only basis for the Trustee to sell property of the estate, providing:

> The Trustee may sell property . . . free and clear of any interest in such property of an entity other than the estate, only if—
>
> . . .
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property

The interpretation of this Section governing the sale of encumbered property is far from uniform. The disagreement centers around the meaning of the phrase "value of all liens."

A number of courts construe the term "value" to mean the face amount of the liens. Therefore, a sale free and clear of liens cannot be approved unless the sale price exceeds the total amount of debts against the property. *See Matter of Riverside Inv. Partnership,* 674 F.2d 634, 640 (7th Cir.1982); *In re Heine,* 141 B.R. 185 (Bankr.D.S.D.1992); *In re Terrace Chalet Apartments, Ltd.,* 159 B.R. 821 (N.D.Ill. 1993); *In re Julien Co.,* 117 B.R. 910 (Bankr.W.D.Tenn.1990). Other courts construe the term "value" to mean the secured value, and not the face amount of the lien. *In re Collins,* 180 B.R. 447 (Bankr.E.D.Va.1995).

In *Riverside Inv. Partnership, supra,* the Seventh Circuit stated that as a general rule the Bankruptcy court should not authorize the sale free and clear of liens unless the sale proceeds will fully compensate secured lien holders and produce some equity for the benefit of the estate, citing *Hoehn v. McIntosh,* 110 F.2d 199, 202 (6th Cir.1940). The Court in *Riverside Investment, supra,* relied on the legislative history of Section 363(f)(3). H.R.Rep. No 95–595, 95th Cong., 1st Sess. 345, U.S.Code Cong. & Admin.News 1978 p. 5963; S.Rep. No. 95–989, 95th Cong., 2d. Sess. 56 (1978), U.S.Code Cong. & Admin.News 1978 p. 5787. These Reports make it clear that Congress intended Sec-

tion 363(f)(3) to protect the amount of the secured debt and not the economic value of the lien. The Bankruptcy Amendments of 1984 further demonstrate that Section 363(f) does not protect merely the actual value of the lien. The previous version authorized a sale free and clear of liens if the sale proceeds exceeded the value of the "interest" of secured parties in the property. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No 98–353, 98 Stat. 372 (BAFJA). The amended version now provides that the sale of free and clear of liens is permissible if the proceeds of the sale exceed the value of "all liens on the property."

 This court is not unaware that some courts arrived at a different conclusion in holding that Section 363(f)(5) protects only the economic value of the collateral. See In re Milford Group, Inc., 150 B.R. 904 (Bankr.M.D.Pa.1992); In re Terrace Gardens Park Partnership, 96 B.R. 707 (Bankr.W.D.Tex.1989); In re Collins, supra; In re Beker Industries Corp., 63 B.R. 474 (Bankr.S.D.N.Y.1986); Matter of Rouse, 54 B.R. 31 (Bankr.W.D.Mo.1985); In re Hatfield Homes, Inc., 30 B.R. 353 (Bankr.E.D.Pa.1983). All these case treated motions to sell property pursuant to Section 363(f)(3) in the context of Section 506(a). Section 506(a) is designed to determine secured status. This Section was designed to serve a twofold purpose: (1) to limit the estate's liability on a claim filed as a secured to payment up to the actual value of the collateral; and (2) to bifurcate the claim and permit an undersecured creditor to have an allowed unsecured claim and share on par with the other allowed unsecured claims. In sum, Section 506(a) was designed for the purpose of determining the allowance of secured claims and not for the purpose of selling encumbered property without satisfying in full all liens from the sale proceeds. This conclusion is further fortified by Subclause (d) which provides that to the extent a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void. It is evident that Section 506 was designed to deal only with claims actually filed. It is elementary that secured creditors are not required to file proofs of claim in a Chapter 7 case. F.R.B.P. 3002(a). Consequently, their claims cannot be disallowed and, in turn, their liens voided pursuant to Section 506(d). It follows that the reliance on the provisions of Section 506 is misplaced and they are irrelevant to a Section 362(f)(3) sale. Thus, the Trustee cannot use Section 506 to justify the sale of encumbered property without complying with the requirements of Section 363(f)(3), that is the full satisfaction of all valid liens encumbering the Property. To conclude otherwise would render Subclause (5) superfluous. This Section permits a cramdown if the secured creditor could be compelled in a legal or equitable proceeding to accept money satisfaction of the interest of the lien holder.

One last comment. Even assuming without conceding that it is appropriate to treat a Section 363(f)(3) motion by relying on Section 506(a) to justify a sale without fully satisfying all valid liens against the subject property, this Court found no authority to permit the sale of property which is fully encumbered and in which the estate has no equity, pursuant to Section 363(f)(5).

Having fully considered the merits of the Motion to Sell, this Court is satisfied that for the reasons outlined, it is inappropriate to permit the proposed sale. Since the automatic stay has already been lifted, the Kennedy Funding Group should proceed to foreclose its mortgage lien in the forum of its own choosing and should conclude its foreclosure in that forum.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Sell Property Free and Clear of Liens and to Approve the Procedure of the proposed sale be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that unless the Motion to Ap-

prove Settlement could be considered independent of the Sale, the Motion is also denied. However, if the Kennedy Funding Group is willing to submit the Settlement for approval without the sale this Court will be inclined to approve the same.