In re Richard James CANONIGO,
Debtor.

No. 01–45994TG.

United States Bankruptcy Court,
N.D. California.

April 2, 2002.

Michael J. Primus, Law Offices of Brule and Rooney, Walnut Creek, CA, for Debtor.

Martha G. Bronitsky, Hayward, CA, trustee.

## MEMORANDUM OF DECISION RE MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

The above-captioned chapter 13 debtor (the "Debtor") seeks authority pursuant to section 363(f) of the Bankruptcy Code to sell his residence (the "Residence") free and clear of the secured claim of Washington Mutual Bank, FA (the "Bank"), over the Bank's objection, without paying in full the face amount of the Bank's claim. For the reasons stated below, the Court concludes that it does not have authority to grant the motion.

### SUMMARY OF FACTS

The Debtor filed a voluntary petition seeking relief under chapter 13 of the Bankruptcy Code on November 8, 2001. He listed the Residence on Schedule A of his Schedules of Assets and Liabilities, valuing it at $512,000. On Schedule D, he listed the Bank as holding a first deed of trust against the Residence, securing a claim of $480,000.

On February 15, 2002, the Debtor filed a motion seeking authority to sell the Residence free and clear of the Bank's lien for $505,000 (the "Sale Motion"). In the Sale Motion, the Debtor represented that the balance due on the Bank's claim was $519,725.34. In addition, the Debtor represented that there were closing and repair costs totaling approximately $36,000 and unpaid real estate taxes of approximately $4,000, all of which would have to be paid before any payment was made on the Bank's claim. Thus, if the sale were authorized, the Bank would receive payment of only approximately $465,000.[1]

The Bank objected to the Debtor's motion and contended that the Court could not authorize the sale pursuant to section 363(f). The Debtor disagreed. At the hearing, the Debtor contended that the Court had the power to authorize the sale pursuant to section 363(f)(5) but cited no case authority to support his contention. The Bank asked for time to brief the issue, and the Court agreed to give both parties a few days to file briefs.[2]

In his post-hearing brief, the Debtor cited a series of cases, most of which discussed the Court's power to authorize a sale free and clear of liens without paying the full face amount of the claims secured by the liens based on section 363(f)(3). Understandably, given the Debtor's reliance on section 363(f)(5) at the hearing, the Bank's brief only cited two cases dealing with that section. On March 5, 2002, the Court issued an order denying the Sale Motion, stating briefly the basis for its decision and indicating that a more detailed memorandum of decision would follow.

1. Claims secured by a judgment lien and a homeowners' association lien, both junior to the Bank's lien, would receive nothing from the sale. However, neither junior lien holder filed an objection to the Sale Motion. In his motion, the Debtor stated no reason for desiring a sale of property in which he held no equity. However, when questioned at the hearing on the motion, Debtor's counsel represented that the Debtor wished to avoid having a foreclosure on his credit record.

2. The Sale Motion was heard on shortened time, based on the Debtor's representation that the proposed buyer's loan commitment was due to expire soon.

## DISCUSSION

Section 363(f) of the Bankruptcy Code provides as follows:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). There is no dispute that the Court may not authorize the sale of the Residence under section 363(f)(1), (2), or (4) of the Bankruptcy Code. Thus, the only issues presented by the Sale Motion are whether the Court may do so under either section 363(f)(3) or (5). As stated above, the Court agrees with the Bank that it may not do so under either section under these circumstances.

## A. SECTION 363(f)(3)

### 1. Summary of Case Law and Commentary

As noted above, the trustee may sell property of the estate free and clear of any interest if the interest is a lien and the price at which the property is to be sold is "greater than the aggregate value of all liens on such property." Courts have disagreed on the meaning of the quoted phrase. The disagreement has primarily turned on the meaning of the word "value." Some courts have interpreted "value" to mean that portion of the claim secured by property with an economic value. Others have interpreted it to mean the full face amount of the claim secured by the lien.

For example, if the property to be sold has a fair market value of $100,000 and is subject to a lien securing a $150,000 claim, a court reading "value" to mean that portion of the claim secured by property with an economic value would permit a sale for $100,000. A court reading "value" to mean the full face amount of the claim secured by a lien would only permit a sale for $150,000 or more.[3]

Leading bankruptcy law treatises appear to favor the latter interpretation. Collier on Bankruptcy acknowledges the split of authority and does not expressly endorse one view over the other. Howev-

---

3. The current language of section 363(f)(3) was enacted as part of the Bankruptcy Judgeship Act of 1984; Pub. L No. 98–353. As originally enacted, in 1978, section 363(f)(3) permitted a sale free and clear if the interest was a lien and the proposed sale price was greater than the aggregate value of the interest (rather than the aggregate value of all liens on the property). See Bankruptcy Reform Act of 1978; Pub.L. No. 95–598. The amendment does not resolve the dispute presented in this case. Under the amended statute, the same dispute may arise over the meaning of "value" as applied to lien of a junior lien holder. For example, if the property to be sold is worth $150,000, the objecting lien holder's claim is for $100,000, and there is a nonobjecting junior lien holder with a claim of $100,000, if "value" is read to mean the amount of the claim secured by property with an economic value, a proposed sale for $150,000 could be authorized under section 363(f)(3). If the word "value" is read to mean the full face amount of all claims secured by liens, the sale could not be authorized even though the sale would pay the full face amount of the objecting lien holder's claim.

er, it describes the "face amount" approach as "consistent with legislative history and the plain language of the statute." [4] It also states that a contrary interpretation would make section 363(f)(3) a "loophole," permitting a trustee or debtor to avoid the requirements of section 363(f)(5) through the use of section 363(f)(3). 3 Collier on Bankruptcy § 363.06[4][a], at 363–47 (15th ed.2001).

Another leading treatise is more unequivocal in its endorsement of the "full face amount" interpretation of the word "value." It bases its view primarily on the 1984 amendment to section 363(f)(3), stating as follows:

> We believe that the amendments were designed also to make it clear that the debtor must have an equity in the property as a condition to the use of (f)(3). Put another way, we believe the debtor in possession may not use (f)(3) unless the *face amount* of the secured claims against a piece of property are less than the price for which that property will be sold.

David G. Epstein et al., Bankruptcy § 4–7, at 402 (West Publishing Co.1992) ("Epstein Treatise").

By contrast, a majority of the courts that have confronted the issue have adopted the "economic value of the lien" approach.[5] The leading case for this approach is *In re Beker Industries Corp.*, 63 B.R. 474 (Bankr.S.D.N.Y.1986).[6] In *Beker Industries*, a chapter 11 debtor sought to sell real property free and clear of all liens for less than the total face amount of the claims secured by the liens based on either section 363(f)(3) or 363(f)(5). The *Beker Industries* court granted the motion. It concluded that the term "value" had the same meaning in section 363(f)(3) as in section 506(a). Section 506(a) states that a creditor's claim is a secured claim "to the extent of the *value* of such creditor's interest in the estate's interest in such property . . . ." *Id.* at 475.

The *Beker Industries* court acknowledged that the House and Senate reports issued in connection with the Bankruptcy Reform Act of 1978 described section 363(f) as permitting "[t]he trustee . . . [to] sell free and clear if . . . the sale price of the property is greater than the amount secured by the lien . . . ." *Id.* at 476. However, the *Beker Industries* court stated that it was not persuaded that, in making the

---

4. The legislative history viewed by Collier on Bankruptcy as more consistent with the "full face amount" approach states that "[t]he trustee may sell free and clear if . . . the sales price of the property is greater than the amount secured by the lien." H.R.Rep. No. 595, 95th Cong., 1st Sess. 345 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6301–6302; S.Rep. No. 989, 95th Cong.2d Sess. 56 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5842.

5. None of the decisions cited by the parties were in chapter 13 cases. The Court has only been able to locate one decision in which a chapter 13 debtor was attempting to sell a residence pursuant to section 363(f): i.e., *In re Penniston*, 206 B.R. 948 (Bankr.D.Minn. 1997). The *Penniston* court denied the motion on the ground that the property in question was no longer property of the estate as required by section 363(f), having been claimed as exempt by the debtor and no timely objection to the exemption having been made. *Id.*, 206 B.R. at 949–950. Since the Bank did not object to the proposed sale on this ground, the Court will not address it.

6. Other cases construing "value" in this fashion are *Matter of WPRV–TV, Inc.*, 143 B.R. 315, 320 (D.P.R.1991), vacated on other grounds, 165 B.R. 1 (1992), rev'd on other grounds, 983 F.2d 336 (1st Cir.1993); *In re Collins*, 180 B.R. 447, 450–452 (Bankr. E.D.Va.1995); *In re Milford Group, Inc.*, 150 B.R. 904, 906 (Bankr.M.D.Pa.1992); *In re Oneida Lake Dev., Inc.* 114 B.R. 352, 356–357 (Bankr.N.D.N.Y.1990); *In re Terrace Gardens Park Partnership*, 96 B.R. 707, 712–716 (Bankr.W.D.Tex.1989).

foregoing statement, the authors of the reports had "focused on the distinction between value and amount." *Id.*

Moreover, the *Beker Industries* court reasoned that interpreting "value" to mean the economic value of a secured claim (rather than its face amount) was more consistent with other provisions of the Bankruptcy Code. For example, the court noted, adequate protection, as defined by section 361, only protects a secured creditor's claim to the extent it is secured by property with an economic value. *Id.* Additionally, in a chapter 11 case, through a confirmed plan, pursuant to sections 1129(b)(2)(A)(ii) and 363(k), encumbered property can be sold for less than the amount of a secured claim provided the secured creditor is permitted to credit bid at the sale. *Id.* at 476–477.

In *Matter of WPRV–TV, Inc.*, the court followed *Beker Industries*, calling the contrary view a "highly criticized and unduly strict interpretation of the Bankruptcy Code." *Matter of WPRV–TV, Inc.*, 143 B.R. at 319. In most instances, it noted, there would be no justifiable business reason for a trustee or debtor-in-possession to sell fully encumbered property. However, when special circumstances existed, making such a sale desirable, the *WPRV–TV* court reasoned, section 363(f)(3) is best read to permit the sale. *Id.* at 321. In *In re Terrace Gardens Park Partnership*, 96 B.R. at 713–714, the court adopted a similar view. The *Terrace Gardens* court noted that, while such special circumstances might be rare in a chapter 7 case, in a

chapter 11 case, the debtor-in-possession might frequently have a good business reason for selling fully encumbered assets free and clear of liens. *Id.*

The leading case for the proposition that "value" means the full face amount of the claim is *In re Stroud Wholesale, Inc.*, 47 B.R. 999, 1001–1002 (E.D.N.C.1985).[7] In that case, a chapter 7 trustee sought to sell real property free and clear of a property tax lien. The *Stroud* court rejected summarily the trustee's contention that the meaning of "value," as used in section 363(f)(3), meant the economic value of the property securing the lien.

The *Stroud* court concluded that the 1984 amendment to section 363(f)(3) was intended to clarify that the court should not authorize a sale free and clear of liens unless the sale price was greater than the full face amount of all claims secured by liens so that there would be some equity produced for the estate. *Id.* at 1001–1002. The court in *In re Perroncello*, 170 B.R. at 191–192, reached the same conclusion in a chapter 11 case, reasoning that a contrary interpretation would be make section 363(f)(5) superfluous.[8]

A more recent case reading "value" to mean the "full face amount of the claim" is *In re Feinstein Family Partnership*, 247 B.R. at 508–509, a chapter 7 case. In *Feinstein*, the court rejected the line of cases stating that section 363(f)(3) must be read in conjunction with section 506(a). It reasoned as follows:

---

7. Other cases supporting this view are *In re Feinstein Family Partnership*, 247 B.R. 502, 509 (Bankr.M.D.Fla.2000); *In re Perroncello*, 170 B.R. 189, 191–192 (Bankr.D.Mass.1994); *In re Heine*, 141 B.R. 185, 189 (Bankr.D.S.D. 1992); see also *Matter of Riverside Investment Partnership*, 674 F.2d 634, 638–641 (7th Cir.1982)(Bankruptcy Act case).

8. The *Perroncello* court read section 363(f)(5) to permit a sale of property without payment of the full face amount of a secured claim as long as the court could compel the lien holder to accept a money satisfaction of its claim in a legal or equitable proceeding. However, as discussed below, not all courts have read section 363(f)(5) in this fashion. *In re Perroncello*, 170 B.R. at 191–192.

It is evident that Section 506(a) was designed to deal only with claims actually filed. It is elementary that secured creditors are not required to file proofs of claim in a Chapter 7 case. Consequently, their claims cannot be disallowed and, in turn, their liens voided pursuant to Section 506(d). It follows that the reliance on the provisions of Section 506 is misplaced and they are irrelevant to a Section 362(f)(3) [sic] sale....To conclude otherwise would render Subclause (5) superfluous.

*Id.* at 509.

### 2. Court's Analysis and Conclusion

 But for the requirement in section 363(f)(3) that the sale price be *greater* than the aggregate value of the liens on the property to be sold, the Court would conclude that the value of the liens means their economic value. This reading adheres more closely to the plain text than the "full face amount of the claim" approach. Elsewhere in the Bankruptcy Code, a clear distinction is made between the "value" of a creditor's interest and the "amount" of the creditor's claim. See 11 U.S.C. § 1129(b)(2)(A)(i)(II)("...the condition that a plan be fair and equitable...includes the following requirements: (A) With respect to a class of secured claims, the plan provides—(i)...(II) that each holder of a claim...receive...deferred cash payments totaling at least the allowed *amount* of such claim, of a *value,* as of the effective date of the plan, of at least the *value* of such holder's interest in the estate's interest in such property....(emphasis added)").

The Court disagrees with the courts and legal scholars who contend that a trustee would rarely have a legitimate interest in selling property for a sale price no greater than the liens on the property. There are a variety of circumstances where a sale of overencumbered property would be in the best interests of the estate. First, the secured claim may be cross-collateralized. While the sale of one piece of the collateral package might produce no equity for the estate, ultimately, the sale of all the collateral would. It would unduly limit the trustee's marketing efforts to require the trustee to sell all the collateral at the same time.

Second, overencumbered property might be subject to a senior lien subject to avoidance, e.g., as a preference pursuant to section 547. Arguably, even after avoidance, because the lien would be automatically preserved for the benefit of the estate (*see* 11 U.S.C. § 551), the avoided lien would still have to be included in the calculation of whether a sale price is greater than the aggregate value of the liens for purposes of section 363(f)(3). However, even if the avoided lien did not have to be included in the calculation, as in the foregoing situation, it would unduly limit the trustee's marketing efforts to require the trustee to wait until the senior lien has been avoided to sell the encumbered property.

Third, generally speaking, a voluntary sale by the estate will bring a higher price than a foreclosure sale by a senior lienholder. The foreclosed out junior may have a deficiency claim against the estate that would compete with other unsecured claims for any other assets of value in the estate. The trustee would have a legitimate interest in maximizing the sale price for the overencumbered property so as to minimize any such deficiency claim.

However, policy reasons cannot defeat the plain language of the statute. Although the word "value" is ambiguous, as used in section 363(f)(3), the word "greater" is not. Assuming the sale price determines the value of the property to be sold, the sale price for overencumbered proper-

ty can never be *greater* than the aggregate economic value of the liens on the property. For example, if property encumbered by a senior lien securing a debt of $75,000 and a junior lien securing a debt of $50,000 is proposed to be sold for $100,000, the aggregate economic value of the liens is $100,000. If someone overbids and proposes to buy the property for $125,000, the aggregate economic value of the liens would increase to $125,000.

The only way the sale price could be greater than the aggregate economic value of the liens is if the sale price also exceeded the face amount of the claims secured by the liens. For example, if the property were sold for $150,000, the aggregate economic value of the liens would still only be $125,000. As a consequence, the Court has no choice but to adopt the minority view: i.e., that the phrase "the aggregate value of the liens" means the full face amount of the claims secured by the liens.

■ Nevertheless, the Court does not base its denial of the Debtor's motion solely on this conclusion. Rather, the Court believes that, notwithstanding this reading of section 363(f)(3), under many circumstances, a trustee or debtor in possession may sell overencumbered property when to do so would benefit the estate. The caveat is that the sale must be based on section 363(b)(1) rather than section 363(f)(3). Section 363(b)(1) permits the trustee to sell property of the estate outside the ordinary course of business. 11 U.S.C. § 363(b)(1). However, in order to give the buyer title free from liens, the trustee must pay the full face amount of the secured claim. In order to do this,

when property is overencumbered, the trustee must first use section 506(a) and (d) to avoid the portion of the lien that does not attach to any economic value.

■ As noted above, section 506(a) states that a claim is a secured claim only "to the extent of the value of such creditor's interest in the estate's interest in such property...." To the extent it exceeds that value, the claim is unsecured. 11 U.S.C. § 506(a). Section 506(d) states, with exceptions not immediately relevant here, that "[t]o the extent a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void...." Thus, generally, pursuant to section 506(d), a trustee may avoid the overencumbered portion of a lien on property of the estate: i.e., "strip it down" to the economic value of the property. Once this is done, the property will no longer be overencumbered. The full face value of the claim secured by a lien on property of the estate will no longer include the "stripped off" amount.[9]

Granted, this reading of section 363(f)(3) limits its usefulness. The trustee would only be able to rely on section 363(f)(3) as authority for a sale free and clear of liens if, despite the fact that the secured claim is not subject to a bona fide dispute, the trustee did not wish to pay the secured claim immediately from the sale proceeds. Section 363(f)(3) would permit this provided the lien attached to the sale proceeds. The requirement that the sale price be greater than the value of the liens would make sense in this context because it would ensure that the accruing interest on

---

**9.** The Court disagrees with the statement in *In re Feinstein Family Partnership* that section 506(d) only applies to filed claims. *Id.,* 247 B.R. at 509. Section 506(d) states that, "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless-...(2) such

claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of...[the Bankruptcy Code]." 11 U.S.C. § 506(d). If section 506(d) were intended to apply only to filed claims, this exception would not be necessary.

the secured claim would ultimately be paid.

■ Unfortunately for the Debtor, section 506(d) does not permit him to "strip down" the Bank's lien. In *Nobelman v. American Savings Bank*, 508 U.S. 324, 327–332, 113 S.Ct. 2106, 2109–2111, 124 L.Ed.2d 228 (1993), the Supreme Court held that a chapter 13 debtor may not use section 506(d) to "strip down" a claim secured only by his or her principal residence to the economic value of underlying property.[10] The *Nobelman* court concluded that "stripping off" the undersecured portion of the secured claim would constitute modifying a claim secured only by the debtor's principal residence contrary to section 1322(b)(2).[11]

## B. SECTION 363(f)(5)

### 1. Summary of Case Law and Commentary

As noted above, originally, the Debtor based his motion to sell the Residence free and clear of the Bank's lien on section 363(f)(5). Section 363(f)(5) provides that the trustee may sell property of the estate free and clear of an interest if the holder of the interest "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." There is no dispute that the Bank could be compelled to accept a money satisfaction of

its lien claim. The Debtor contends that this is sufficient to satisfy the statute. He contends that the Court should not read into the statute the additional requirement that the sale price be sufficient to satisfy the claim.

As with section 363(f)(3), the case law and leading bankruptcy law treatises have had some difficulty construing section 363(f)(5). The Epstein Treatise describes section 363(f)(5) as "a bit of an enigma." Epstein Treatise at 403. Read literally, according to the Epstein Treatise, section 363(f)(5) would appear to authorize sale free and clear of any security interest. It contends that this would render sections 363(f)(1) through (4) superfluous, at least as applied to liens. To avoid this absurdity, the Epstein Treatise concludes section 363(f)(5) should be read to require the sale price to be sufficient to pay the full face amount of the claim secured by the lien unless the lien is avoidable. *Id.* at 404. This approach was adopted by the *Feinstein Family Partnership* court. 247 B.R. at 509.

Collier on Bankruptcy, on the other hand, reads section 363(f)(5) as requiring payment of the full face amount of the claim secured by the lien unless the lien holder could be compelled to accept less than full payment through some legal or equitable proceeding. It cites two examples of proceedings in which the law would

---

**10.** The majority of courts, including the Ninth Circuit Bankruptcy Appellate Panel, have held that a lien that is wholly unsecured by any equity in the underlying property may be "stripped off" pursuant to section 506(d). *See In re Lane*, 280 F.3d 663, 665–669 (6th Cir.2002); *In re Pond*, 252 F.3d 122, 124–126 (2nd Cir.2001); *In re Bartee*, 212 F.3d 277, 284–295 (5th Cir.2000); *In re McDonald*, 205 F.3d 606, 611 (3rd Cir.2000); *In re Tanner*, 217 F.3d 1357, 1358–1360 (11th Cir.2000); *In re Mann*, 249 B.R. 831, 838 (1st Cir. BAP 2000); *In re Lam*, 211 B.R. 36, 38–41 (9th Cir. BAP 1997), appeal dismissed on other

grounds, 192 F.3d 1309 (9th Cir.1999). Therefore, presumably, a chapter 13 debtor could "strip off" a claim secured by no equity in his or her residence and sell the residence for an amount equal to the remaining secured claims pursuant to section 363(b)(1).

**11.** Chapter 11 contains a provision comparable to section 1322(b)(2). *See* 11 U.S.C. § 1123(b)(5). As a result, a debtor may not "strip off" the overencumbered portion of a claim secured only by his or her principal residence in a chapter 11 case either.

permit such a sale. First, under the Uniform Commercial Code, property may be sold free and clear of a lien for less than the full face amount of the claim if the property is sold in the ordinary course of business. Additionally, in a chapter 11 case, a plan may be confirmed that provides for a sale free and clear of a lien without payment in full of the claim as long as the lien holder is allowed to credit bid its claim at the sale. See 11 U.S.C. §§ 1129(b)(2)(A)(ii); 363(k); 3 Collier on Bankruptcy § 363.06[6], at 363–48–49 (15th ed.2001).

This approach has been adopted by a number of courts. See *In re Grand Slam U.S.A., Inc.* 178 B.R. 460, 462 (E.D.Mich. 1995); *In re Terrace Chalet Apartments, Ltd.*, 159 B.R. 821, 829–830 (N.D.Ill.1993); *In re Healthco Int'l, Inc.*, 174 B.R. 174, 176 (Bankr.D.Mass.1994); *Matter of WPRV–TV, Inc.*, 143 B.R. 315, 321. Other courts appear to have focused on the reference to equitable proceedings in section 363(f)(5). The *Stroud* court concluded that a trustee may sell property of the estate free and clear of a lien without paying the full face amount of the claim secured by the lien in a rehabilitation case but not in a liquidation case. *In re Stroud Wholesale, Inc.*, 47 B.R. 999, 1002–1003. Other courts have concluded that the trustee may do so in either type of case, but only when there are "compelling equitable considerations." *In re Heine*, 141 B.R. 185, 189–190 (Bankr. D.S.D.1992); *In re Wing*, 63 B.R. 83, 85 (Bankr.M.D.Fla.1986).

The most provocative view is that taken by the *Beker Industries* court. It concluded that section 363(f)(5) was not intended to apply to liens at all. It noted that liens were dealt with directly in section 363(f)(3). It reasoned that, if section 363(f)(5) were interpreted to apply to liens as well and were read literally, it would "'swallow-up (f)(1)-(f)(4).'" *Id.*, 63 B.R. at 478, quoting from *Stroud*, 47 B.R. at 1003. The *Beker Industries* court concluded that section 363(f)(5) should instead be interpreted as referring only to interests other than liens. *Id.* at 478.[12]

## 2. Court's Analysis and Conclusion

■ As with section 363(f)(3), the Court finds the *Beker Industries* reading of section 363(f)(5) the most persuasive. The Court concludes that section 363(f)(5) was not intended to apply to liens at all, only to other types of interests in property. Although this interpretation requires a narrower reading of the word "interest" in section 363(f)(5) than in section 363(f)(3), any other approach requires an even more dramatic judicial gloss on the statute with a less sensible result.

If section 363(f)(5) is read to apply to liens, read literally, it is puzzling why that section does not require that the sale price be sufficient to provide a money satisfaction of the secured claim. However, if section 363(f)(5) is read to apply only to interests other than liens, the omission of this requirement makes perfect sense in two regards. An interest in property may never be greater than the fair market value of the property. Moreover, if section 363(f)(5) is read to apply only to interests other than liens, it would supplement rather than "swallow-up" section 363(f)(1)-(4).

Since the Bank's lien is a "lien" rather than an "interest," the Court concludes

---

12. The discussion of section 363(f)(5) in *Stroud*, suggesting that section 363(f)(5) was primarily intended to apply to interests in liquidation cases, supports this view. However, the *Stroud* court does not adopt this approach. Instead, it reads into the statute the additional requirement, as applied to a secured claim in a liquidation case, that the face amount of the claim be paid in full. *Stroud*, 47 B.R. at 1003.

that section 363(f)(5) does not apply. Thus, the Court concludes that the Debtor's motion to sell the Residence free and clear of the Bank's lien may not be authorized under section 363(f)(5).

## CONCLUSION

The Debtor's motion to sell the Residence free and clear of the Bank's lien for a sale price insufficient to pay the full face amount of the Bank's claim must be denied. The sale may not be authorized under section 363(f)(3). Section 363(f)(3) requires the sale price to be *greater* that the total value of the liens on the property. The phrase the "value of the liens" must be construed to mean the full face amount of the claims secured by the liens. Interpreting the phrase to mean the "economic value of the liens" is inconsistent with the plain language of section 363(f)(3) since a sale price can never be *greater* than the economic value of the liens.

Under most circumstances, when property of the estate is overencumbered, a trustee may "strip down" the liens to the economic value of the property based on section 506(d) and then sell the property pursuant to section 363(b)(1) rather than 363(f)(3). However, section 1322(b)(2), as construed by the *Nobelman* court, bars the Debtor from "stripping down" the Bank's lien on the Residence. Consequently, the Debtor may not sell the Residence pursuant to section 363(b)(1).

Finally, the Court also concludes that the sale may not be authorized under section 363(f)(5). Section 363(f)(5) was intended to apply only to interests in property other than liens.